CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/19/2024
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| GERBER LIFE INSURANCE CO., *Plaintiff*, v. JEFF FLYNN, *et al.*, *Defendants*. | CASE NO. 6:22-cv-00029 FINDINGS OF FACT AND CONCLUSIONS OF LAW JUDGE NORMAN K. MOON |

In this interpleader action, this matter is before the Court upon its own motion, and following an evidentiary hearing that the Court convened concerning disposition of the amount of $11,846.73, plus any applicable interest, that Gerber Life Insurance Company deposited into the Court's Registry. These funds were proceeds from a whole life insurance policy Gerber issued to the Decedent Dennis Flynn. For the following reasons, the Court finds that funds shall be paid to the named beneficiary, Shylar York.

Findings of Fact

1. On January 16, 2018, Gerber issued a whole life policy insuring Dennis Flynn. Dkt. 1 ¶ 10; Dkt. 1-1 (the "Policy").[1]

2. Dennis Flynn named Shylar York as the sole beneficiary of the Policy, and identified her as his daughter. Dkt. 1 ¶ 12; Dkt. 1-1 at ECF 6–7.

3. Dennis Flynn passed away on December 6, 2021. Dkt. 1 ¶ 13.

---

[1] The Policy was a Gerber whole life policy, policy number 80945048. Dkt. 1 ¶ 10.

1

4. Gerber notified Jeff Flynn, Dennis Flynn's son, that Shylar York was the named beneficiary and requesting the return of claim materials. Dkt. 1-2.

5. Jeff Flynn responded to Gerber:

> Shyler York is not part of the Flynn family. I have a firm belief that Ms[.] York coerced my father into making her the beneficiary to his policy. He was on so many medications that he didn't know where he was most of the time. I was the one helping him and paying his bills and maintaining the house [and] his properties. I also have multiple witness' [sic] that state the same. Therefore I don't care if the money sits in hock for the next 30 years[.] I will not help you by providing any information so a con-artist/Drug addict will get my father[']s life insurance money.

Dkt. 1-4 at ECF 2–3.[2]

6. Beverly Flynn sent a written response to Gerber as well, in which she identified herself as the wife of her deceased husband Dennis Flynn. Dkt. 1-5. Beverly further asserted that "[w]e suspect fraud, coercion, and elder abuse in this case and would like you to block payment until this can be investigated." *Id.* at ECF 2. In the letter, Beverly raised a number of concerns about Shylar and her boyfriend Chris, who had been living with Dennis, including: (1) while there was an agreement for Shylar and Chris to "pay the house bills … they did not always do [so]," (2) they were allegedly responsible for damages to their living quarters and other portions of the residence, (3) Dennis's oxycodone medication "was often or always stolen by" Shylar and Chris; (4) "if [Shylar] was mad at [Dennis] she would not bring his meals to him for up to two days," she would not answer her phone, and Dennis "was disabled and could not prepare his meals." *Id.*

---

[2] The Court notes that the record includes some references to her name as Shyler York rather than Shylar York. For constituency, the Court uses the latter spelling.

7. Having received conflicting demands with respect to payment of the Policy proceeds, Gerber initiated this interpleader action and paid the Policy proceeds into the Court's Registry. Dkt. 1 (Interpleader Complaint); Dkt. 26 (Order Authorizing Interpleader Deposit).

8. Consequently, the Court convened an evidentiary hearing, to be conducted via Zoom videoconference to resolve any conflicting demands and to ascertain the appropriate disposition of the interpleaded funds. Dkts. 27, 28.

9. The Court directed all parties asserting any interest to appear and participate in the evidentiary hearing, and sufficient notice was afforded to all interested parties to participate in the hearing. Dkt. 27. The Court directed all parties to submit, no later than one week prior to the evidentiary hearing, any documents or other tangible evidence in support of their position. *Id.* at 2. No party submitted any such evidence.

10. At the evidentiary hearing, the Court heard testimony from Dennis Flynn's son, Jeff Flynn; Dennis Flynn's estranged wife, Beverly Flynn; and Shylar York. Dkt, 30 (Minutes).

11. Having heard the testimony and assessed the credibility of the witnesses, the Court finds that Dennis Flynn considered Shylar York to be his daughter and treated her as such, as he and his wife had raised and cared for Shylar York from when she was young. That corresponded with Dennis's designation of Shylar York as his daughter when he named her as sole beneficiary of the Policy.

12. Shylar York and her boyfriend had been living with Dennis Flynn in his residence in Lynchburg in the years that preceded Dennis's death.

13. Dennis Flynn had nurses or home health aides that would regularly come to the residence to assist with his care, including doing light cleaning, washing, folding laundry, and other light housework.

14. When Shylar York lived at Dennis Flynn's residence, she was responsible for cooking and preparing his meals, taking him to doctor's appointments, as well as to get groceries and run other errands. On occasion, she would help him take his medications. She did not write checks for him. She did not share any joint banking or checking accounts with him.

15. While Dennis Flynn was mostly wheelchair bound in the years before his death, he retained some limited mobility and was encouraged by his physical therapist to move around. As such, he was able, on his own, to get his medications or food from the kitchen.

16. Having heard the testimony and assessed the credibility of the witnesses, the Court finds no persuasive evidence supports that Shylar York and her boyfriend stole Dennis Flynn's medications.

17. To be sure, Beverly testified that Dennis Flynn had medications delivered to his residence, his medications were stolen "more than once," and that Dennis called the police to report theft of his medications. But her testimony was hearsay, mostly repeating what Jeff Flynn and an unnamed "neighbor" told her. Moreover, to the extent Beverly testified as to what Dennis himself told her, it was just that his medication was always short. In sum, it appears that Beverly simply believed that "somebody was taking it, because Dennis wasn't taking it." But even if that were true, no persuasive evidence in the record supports that Shylar and/or her boyfriend had stolen Dennis's medications.

18. On the contrary, Shylar York testified persuasively that she and her boyfriend had never taken any of Dennis's medications.

19. Having heard the testimony and assessed the credibility of the witnesses, the Court finds no persuasive evidence that Shylar York withheld meals or food from him. On the contrary, Shylar York testified persuasively that any disagreements regarding meals concerned minor differences in timing when they would be served.

20. At some point between 2020–July 2021, Shylar York and her boyfriend moved out of Dennis Flynn's house. There is conflicting evidence regarding whether they moved out voluntarily (as Shylar testified) or were kicked out (as Beverly and Jeff Flynn testified). Even if Beverly and Jeff's account were believed, that would undermine their argument that Shylar York was exercising any undue influence over Dennis Flynn.

21. No party introduced persuasive evidence such as would indicate Dennis Flynn was not of sound mind *in 2018*, at the time he executed the Policy. Descriptions by Beverly Flynn, Jeff Flynn and Shylar York mostly addressed his mental state years later. He was not diagnosed with dementia or Alzheimer's.

## Conclusions of Law

"A court of equity will not set aside a contract because it is rash, improvident or a hard bargain but equity will act if the circumstances raise the inference that the contract was the result of imposition, deception, or undue influence. To set aside a deed or contract on the basis of *undue influence requires a showing that the free agency of the contracting party has been destroyed*." *Ayers v. Shaffer*, 748 S.E.2d 83, 90 (Va. 2013) (cleaned up, emphasis added). Rather, "the person seeking to set aside the contract must prove undue influence by *clear and convincing evidence*." *Id*. "[T]he presumption of undue influence arises and the burden of going forward with the evidence shifts when [1] weakness of mind *and* grossly inadequate consideration or suspicious circumstances are shown *or* [2] when a confidential relationship is established." *Gelber v. Glock*, 800 S.E.2d 800, 816 (Va. 2017).

A "confidential relationship" arises "when it is clear that the parties do not deal on equal terms, but, on the one side, there is overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed." It can arise "when one party relies on the other party for assistance with daily needs and activities." *Gelber*, 800 S.E.2d at 818.

5

Upon consideration of the findings of fact set forth above and other evidence in the record, the Court **concludes** that Beverly Flynn and Jeff Flynn **have not established** by a preponderance of the evidence, much less established by clear and convincing evidence that Shylar York exercised "undue influence" over Dennis Flynn, or that the Policy was the result of "imposition, deception, or undue influence." *See Ayers*, 748 S.E.2d at 90. Nor have Beverly Flynn and Jeff Flynn demonstrated that, in 2018, Dennis Flynn was suffering from "weakness of mind," or that the relationship between Dennis Flynn and Shylar York was marked by "grossly inadequate consideration or suspicious circumstances." *See Gelber*, 800 S.E.2d at 816. Finally, Beverly Flynn and Jeff Flynn have not demonstrated that a "confidential relationship" between Dennis Flynn and Shylar York was established, because they have not shown the parties dealt on unequal terms, nor that Shylar York exercised any "overmastering influence" on Dennis. *See id.* Finally, while the evidence showed Dennis Flynn relied to an extent on Shylar York for some daily needs, he was not beholden to her such as would constitute a "confidential relationship" within the meaning of the law.

At bottom, Dennis Flynn named Shylar York as beneficiary of the Policy. That choice is to be given legal effect, absent clear and convincing evidence of undue influence. None was shown. Accordingly, Shylar York is entitled to the proceeds of the Policy, plus any interest that has accrued.

Disposition

The Clerk of Court is directed to pay to Shylar York the proceeds of the Policy that have been held in the Court's Registry in connection with this case, plus any accrued interest thereon.

The Clerk of Court is directed to strike this case from the Court's active docket.

It is so **ORDERED**.

The Clerk of Court is directed to send these Findings of Fact & Conclusions of Law to the parties.

ENTERED this  19th   day of August, 2024.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE